Page 22-5807 State of Tennessee et al. v. Department of Education et al. Oral Argument 15 minutes for appellants, 15 minutes to be shared by appellees. Mr. Peters for the appellants. Good morning, Your Honors. May it please the Court. David Peters, Math United States of America. The District Court erred in several respects when it issued a preliminary injunction barring the Department of Education from implementing certain informational documents. Those documents merely set out, at a high level of generality, the Department's thinking on the question of whether, in light of the Supreme Court's decision in Bostock, Title IX prohibits discrimination based on sexual orientation and gender identity. The State lacks standing to challenge the documents, the documents are not reviewable final agency action, and they certainly are not legislative rules subject to notice and comment rulemaking. The injunction should therefore be vacated. If I may, I'd like to start with what the documents do and critically what they don't do. The documents merely set out the Department's understanding of Title IX's requirements in light of the Supreme Court's decision in Bostock. They speak at a high level of generality as to what... How high is the level of generality? Because I understand that you're saying that in particular cases, maybe, I don't know, maybe sports teams that are segregated by biological sex would be allowed to continue, but no blanket rule will be allowed under the government's policy, right? So if a state had a blanket rule that said, you may not segregate sports teams by sex or bathrooms by sex, and that's the state's law, you would not allow that, right? So that seems not like a high level of generality. You know, it's important to understand what these documents say. So these documents don't address that question. They don't address whether, frankly, what constitutes prohibited sex discrimination based on gender identity or sexual orientation, and they certainly don't address whether any particular policy or practice would constitute prohibited discrimination. What about the fact sheet that has the specific examples on it? You know, the fact sheet gives stylized examples of situations that the department may investigate because they could be violations of Title IX. They do not... But they were just picked out of thin air? I mean, they're stylized. I mean, they seem fairly specific. I mean, I don't... Why are they even there, then? What's the point of the fact sheet at all? These are informational documents. The fact sheet was issued to parents and students about, again, in light of BOSAC, how the department understands the prohibition on sex discrimination does encompass discrimination on the basis of sexual orientation and gender identity, but it just doesn't address what particular policy or practice does, in fact, constitute prohibited discrimination. What does the fully enforced language mean in the documents? You know, the language is quite clear that the department would fully enforce Title IX. It's not enforcing these documents. But it is enforcing... I'm sorry. Go ahead. It is enforcing the administration's understanding of Title IX, though. Certainly, Your Honor. It's enforcing the administration's understanding of Title IX. And is this the administration's understanding of Title IX? It is part of the administration's understanding of Title IX. It is one aspect of it. But the state's understanding... In terms of standing, Your Honor, the state's theory is that these documents prohibit specific state laws, but they don't do that. These documents don't address any particular state law, and critically, Your Honor... But in your notice of compliance, you say we will not treat as binding these documents. Did you treat them as binding before Judge Ashley's injunction? Not at all, Your Honor. And you say you won't base your position on these documents. Is there any difference in what you would do basing them on the documents as opposed to not basing them on the documents? Your Honor, the documents themselves explain that they will guide the agency's enforcement of Title IX, but these documents are not what's being enforced. And that's... But why does that make a difference? So if you have regulations, which as I understand you do, that say that states... I don't know... Bathrooms segregated by sex and sports teams segregated by sex... And if you've put that out in a notice and comment regulation, in order to change position, right, on your state farm, wouldn't you have to do another notice and comment rulemaking? So if you have a rule out that says this is the administration's... This is the United States' interpretation, Department of Education's interpretation of Title IX, how can you enforce a contrary interpretation of Title IX without going through notice and comment? I just... I'm kind of at a loss. Your Honor, the July 22 NPRM, I think maybe what you're referring to... No, I'm referring to 34 CFR 106.33. A recipient may provide separate toilet, locker room, and shower facilities on the basis of sex. And that's the existing reg that's been there since what, the 70s, 80s? Yes, Your Honor, these are the existing regulations. My apologies, I misunderstood the question. These documents, again, these documents have been enjoined on a procedural ground. And these documents don't address regulated entities' existing obligations under existing regulations. They just don't speak to it. You can't look at these documents and say, is any particular policy or practice a violation of Title IX? Again, they don't speak to what constitutes prohibited sex discrimination or whether any particular policy or practice does. And so does that mean that, for example, what is gender identity isn't really addressed? Your Honor, it doesn't address gender identity. You say that discrimination on account of that is forbidden. And, for example, maybe this is too merits-based, but to me, and help me if I'm wrong, gender identity can be expressed, let's say, by a declaration or by manner of dress or presentation or by chemical changes or by surgery. There's a transition, there's a process. Are you saying the government has no position on when you become trans? Not reflected in these documents, Your Honor. These documents don't speak to it. And again, I just want to point one more thing. What the Department has vowed to fully enforce is Title IX, not these documents. But you have an existing interpretation of Title IX that exists in notice and comment regulations. Yes? Your Honor, there are existing regulations as to Title IX's obligations. So if you were now to proceed against a school district based on a contrary interpretation of Title IX, would you be allowed to do that? Saying, well, our regulations now, we have these regulations. We now, our regulations, we have a different view. We haven't withdrawn the regulations. I mean, that's why I'm getting stuck. Your Honor, I just don't think that these documents address that. These documents... But your argument really is that  they're not... So that if you litigate the other side or whoever the other side is can say, your position violates the regulations, right? Your Honor, if the... Surely the answer to that's got to be yes. If an enforcement action was brought and... Whatever you're doing violates the regulations, that's a legitimate position. Your Honor, exactly. And these documents wouldn't be... So in other words, you aren't going to enforce, even though the documents say you will fully enforce this understanding of Title IX, what you're saying is, don't worry, we're not going to do that. We will not enforce an understanding of Title IX that is contrary to the existing interpretation of Title IX, which is sex discrimination based on biological sex is fine with respect to bathrooms and sports teams. Your Honor, if I may, I would direct the Court to the Department of Education has explained its understanding of how Title IX's prohibition on sex discrimination and in light of Bostock and its treatment of gender identity and sexual orientation, how those interact with the existing obligations under Title IX and the current regulations. The point is that these documents, in an enforcement action that would be brought, these documents would be entitled to no deference at all. They wouldn't be. But why isn't this just saying we've got a contrary interpretation of the statute that conflicts with our existing regulations, but we're going to enforce our contrary understanding. So it gives notice. Why should the states not feel like, gosh, we have to do something here. Your Honor, again, a few things. In terms of the standing analysis, because these documents do not impose any obligations on the states, because they're not enforceable in any way, any harm that the states have suffered is not traceable to these documents. But the document says that the schools have a responsibility to investigate and address sex discrimination, including sex harassment, blah, blah, blah. So that you're saying you have a responsibility to investigate and here are examples of the kinds of incidents that you can investigate. You know, somebody wants to try out for the girls' cheerleading team, you know, et cetera, et cetera. I don't understand. If I'm a state and I'm reading this document, you're saying, well, this document means nothing. It's like a blank page. What am I supposed to do if I'm the university president? Just say, oh, I don't have to deal with this thing at all? Your Honor, a few things. One, again, the obligation to and so again, if you enjoin these documents. But what if we're not enjoining the document? I mean, it's weird, enjoin a document. Enjoin an enforcement. Enjoin the administration's enforcement of a contrary, a position that is contrary to their prior position that didn't go through notice and comment. You don't enjoin a document. It can exist. Isn't that what the judge actually did? That's what the judge actually did, Your Honor, exactly. What was done here was these documents were enjoined, the implementation of these documents were enjoined. The implementation of the documents. The implementation of the interpretation that's contrary to the existing interpretation. No, Your Honor. I don't think that's quite right. What the district court did here was issued a preliminary injunction enjoining implementation of these documents. We submitted a notice of compliance indicating that we don't understand that injunction to bar the department from enforcing the obligations of Title IX itself. And it would be a very curious thing, Your Honor, to enjoin a understanding of Title IX, especially because the preliminary injunction here was issued on procedural grounds. And so I would point to this Court's, the Eighth Circuit's decision in the School of Ozark, where the Court there was faced with a nearly identical document and found that the states I mean, sorry, regulated entities lacked standing precisely because any obligations flowed from the Fair Housing Act, not from the document itself. Counsel, let me, there's a, we're lawyers. This is a linguistic discussion. I heard Judge Larson say look, you've got an interpretation that's contrary to existing regulations. Your document says at 32-639, column 3, this interpretation supersedes and replaces any prior inconsistent statements. Is it your position that it's only prior statements that you're superseding you're not superseding any regulation? Certainly, Your Honor. But then the statements wouldn't have been binding either. No, and Your Honor... Would it have made any difference if instead of issuing the regulation, the President made a speech saying exactly the same thing? I don't think so, Your Honor. The agencies issue documents like this all the time. And they reflect the agency's understanding of the statute that it is charged with enforcing. It doesn't mean that the documents that they are, these kind of notices of interpretation are final agency action or, and critically, they're not legislative rules. They can't be enforced. And it's borne out, Your Honor, by the fact that during the course of this litigation, private parties have brought suits against the states. And neither the private parties nor the courts that are adjudicating those disputes have understood these documents in any way to create legal obligations or determine legal rights. So they're not legislative. So the U.S. has never cited these documents in any amicus brief or any position in any of those cases? Your Honor, I think there was a Title VII case where this was cited as a C also. But it has not cited these documents in any of the Title IX cases precisely because they don't create any legal rights and obligations. And they wouldn't be accorded any weight in adjudication. Yeah, I'm just still, yeah, okay, so you wouldn't get Chevron deference because they're, on your theory, they're just interpretive rules so you wouldn't get Chevron deference, etc. But I'm just still puzzled about why the administration would put out some documents that you're now claiming don't mean anything but you're saying you're going to fully enforce that conflict with prior regulations. A few things, Your Honor. The reason that these documents are put out, again agencies put out documents like this all the time. It's not just like here's the Secretary of Education's musings on Title IX. It's not like oh, I had some thoughts about how this might interact with Bostock like a law review article. It's like I have some thoughts and you have a duty as a school district to comply with my thoughts. I don't, yeah, explain that. Your Honor, a duty is to comply with Title IX. Right. Not these documents. And these documents were enjoined on procedural grounds. And so, you know But the Secretary's interpretation of Title IX is what the Secretary is going to enforce. And the Secretary's interpretation of this interpretation of Title IX conflicts with existing regulations regarding Title IX. I'm just, Your Honor, I see my time is running out. A few points. We would contest that these documents conflict with existing regulations. But even putting that aside, even if the Secretary How do they not conflict with the existing regulations? They just do not address how regulated entities' obligations to not discriminate based on sexual orientation and gender identity operate within the context of the existing regulations. And that's borne out by the notice of proposed rulemakings in the July 22 and the most recent sports one. Right, but the blanket rules would not be permitted. Right? So the states claim, like, we have blanket rules. And I mean, maybe you're telling me that's wrong. Maybe you'll say, well, the administration is going to allow some states to have blanket rules. And that's what we mean by case by case? Your Honor, my time is running out. I may finish. Your Honor, these documents are if I would point the Court to the filing in the BPJ case, the Fourth Circuit which is the West Virginia athletics case. The interpretation that's set out here is merely the jumping off point for the Department's position that categorical bans of that nature in fact violate Title IX under existing regulations. But the interpretation that is set out in these documents are merely just one part of that analysis. They don't really get you to why it is the case that a law like that, it does in fact violate Title IX. But again, just putting that all aside. So does that mean that in BPJ if the government's position is consistent with your notice of compliance? It is, Your Honor, because the government there is not relying on these documents. And that's the point. Putting, even putting these, again, I'm sorry, I may finish. Even putting So that Judge Ashley's decision makes you no worse off in BPJ? No, Your Honor, and again So why are you fighting to pursue it if it makes you no worse off? Why are you trying to get rid of something that makes you no worse off? You know, because there is value in the Department having the ability to tell regulated entities what its understanding is. And that's especially the case in light of the uncertainty that was created after Bostock. But again, I just want to make this last point. Even putting aside whether the interpretation is right, Your Honor, or wrong, that doesn't make this a legislative rule. You know, the D.C. Circuit in the POET biorefining case said an interpretive rule may be, is still an interpretive rule even if the interpretive question is wrong. The key is whether the documents themselves are imposing legal obligations. And these documents are not doing that. They cannot be enforced. They're not being relied upon by courts. They don't create legal obligations. They're just not the type of thing that are legislative rules. I see my time is up. If there's any other questions or comments, I'll open it up for questions. Thank you. Clark Littlebrand for the State of Tennessee and 18 other plaintiff states. So first of all, these documents do impose obligations on the states that we did not have before the documents were issued. The interpretation says that where OCR's investigation reveals that one or more individuals has been discriminated against because of their sexual orientation or gender identity, the resolution of such complaint will address the specific compliance concerns or violations identified in the course of this investigation. Before this document was issued, discriminating on the basis of sexual orientation or gender identity was not a violation of Title IX or existing Department of Education regulations. Similarly, as your Honor pointed out, for the fact sheet So stuffing a kid in a locker because he's wearing a dress wouldn't violate Title IX? Causing harm to a student because of the student's sex, that would be something that would be considered there, but merely dressing up a certain way. Title IX doesn't address every sort of incident of misconduct that occurs in schools across the country. But what the fact sheet does is it says that simply having sex-separated bathrooms, it's one of the examples that's provided there, would be a violation of Title IX. And that's not what previous Department of Education regulations or Section 1686 said. So your friend on the other side is saying that their documents are essentially meaningless at this point. So why don't we just wait until they actually bring some kind of enforcement action against you or one of the other states, and then we can just adjudicate it in the normal course? Why do we need a pre-enforcement challenge at this point? Pre-enforcement challenges are common in APA context, protect us from the significant billions of dollars loss of funds that would occur if we were forced to wait for the agencies to drop the hammer and bring enforcement action against us. But you're not paying penalties now. I mean, you're not there's no expense now, is there? I mean, in some of the cases, you have ongoing penalties, you have penalties that kick in right away, you've got to go to court, get it stopped, whatever it is. I don't see how that's true in this context. So two responses, Your Honor. First of all, there are compliance costs if we were to comply with these documents. We'd have to change our policies, change the way that we structure our bathrooms, our athletics teams, and second of all... Well, he's saying you don't. My understanding. Simply reading these documents... Are we getting the case settled maybe today? I don't know. Well, simply, that's what they'll say in court here, but simply reading these documents say that public elementary and secondary schools, as well as public and private colleges and universities, have a responsibility to investigate and address sex discrimination against students because of their perceived or actual sexual orientation or gender identity. So this has been their position in court, is that this doesn't do anything, but reading the documents themselves, they do impose obligations on the states and schools. Now, I had a bunch of questions to ask, but he answered most of them before I asked them. I mean, he said on the record as a government spokesperson, a lawyer, there's no deference due to these documents, that they impose no legal obligations, and they make them no better off in litigation. I mean, if we issue an opinion saying all of those things, doesn't that give you 99.44% of what you want? Well, I would say look at the government's actions outside of this case. They've cited this in Kluge, as they said, that an Indiana school in Kluge, it's the Seventh Circuit case, where the government, they filed a brief five days after oral argument in the district court, saying that a school exposed itself to Title IX liability if a teacher did not use preferred pronouns, and they specifically cited the interpretation. They've also opened an investigation of Granbury Independent School District in Texas, where the complaint was based on the interpretation fact sheet. They didn't tell us that this was going on. We had to bring that to the court's attention. So, would your argument be that in the absence of this, they would have been barred from even beginning an investigation of whatever happened in Granbury? I think with the injunction in place, they are barred from opening an investigation against a school district relying on those documents. Well, relying on, but has Granbury, has that investigation been closed? Somebody waved to Judge Ashley's decision and said, go back to Washington? Well, that case involves a Texas school district, and Texas is not part of the preliminary injunction, so they can't enforce it against them there. Read the list well enough then. And so, those are examples where they have. This has also been cited against us by private parties. ASV Lee is one of the examples that we provided, where Tennessee was sued in a party cited over a bathroom issue in a party cited. How would it be any different if it were a secretarial speech or a presidential speech that says in vigorous terms the same thing? Yeah, so the two questions are whether or not it's the consummation of their decision making or whether or not it has the effect of law or imposes new obligations. So, a mere speech that says this is what I think about Title IX, or if it's just simply that this is a starting point. Well, if the president says this is what I think about Title IX, and I've told everybody to do what I think, that's what presidents do, isn't it? Well, if the president got on the phone and called every school district and said, you must, you have an obligation not to discriminate on the basis of sexual orientation or gender identity, that might be comparable to what they have done here. So a speech can be a legislative rule? Well, I think here, it's different because there it's reduced to text. They publish it in the federal, if he put out a speech, published it in the federal register, and then they sent it out to all the schools telling them they had an obligation to comply with that, then such a statement by the department could be a final agency action. I mean, if he said something like, oh, by the way, you know that we fully enforce Title IX, wink, wink, nod, nod, I mean, I don't. Or your federal funding is on the, your federal funding could be on the line. Yeah, I don't know if that would really be the conservation of the agency's decision making here. Here, these really do bind the department to act in a certain way here. They take away discretion, as we see in cases such as Texas VEOC or McCouth, where it takes away the agency's discretion on how they're able to approach this. But now you won there and they didn't appeal, right? In Texas versus EEOC. So there are multiple Texas VEOC. This is the, I believe, the 2015 Texas VEOC. I'm talking about the one where Judge Kaczmarek just struck it down and they didn't appeal the thing that was issued by the EEOC chair, right? Which, that one was very vigorous in terms, well, I thought it was odd, and maybe you can help me. It's very vigorous in flatly saying that transgender women can use women's facilities, but it was also even more vigorous than your adversary here in saying this means nothing. I don't know if you were involved in litigating. I wondered, maybe you can tell me on rebuttal, why they didn't appeal that. I would have my guesses as to why they didn't appeal the Fifth Circuit, but we weren't involved in litigating that case, so I couldn't say there, Your Honor. Can we go back to the question about, you know, the language or whatever it might be. What is it that you think takes these documents out of the realm of what I think you conceded was just an interpretation or just amusing by the President? Is it the will and force language? What is it that makes these documents cross the line from interpretive to legislative? So the two things, Your Honor, are first of all it takes away discretion from the agency in how they approach these in the future. They say that you have to treat discrimination on the basis of sexual orientation or gender identity as a violation of Title IX. It creates that new obligation that we didn't have beforehand. And then the second way that it's distinct from that scenario is that it conflicts with the previous, it's sent out to all of the schools and institutions and informs them that this is the new conflicting, we're setting aside all of our previous statements, this is what you have to follow now. So that makes it distinct from just a presidential speech. This is a consummation of final agency decision making. But you agree, you just used the language, supersedes previous statements, not supersedes previous regulations. I don't see how these documents can impose the obligations they purport to impose without conflicting with those regulations and with the text of Title IX itself, which section 1686 expressly allows schools to provide separate living facilities for the different sexes. These clearly conflict with that. The examples in the fact sheet, for instance, say that we have to allow a student, a male student, to use a girl's restroom. Do you think that this is essentially a 1682 action that was the statute of limitations, or can they just do it without any, I mean, what's the statutory kind of basis for the issuance of this thing? Or maybe they're saying it doesn't need one, it's just a musing of somebody at the Department of Education. I think this would be rulemaking under section 1682, which is not precluded from bringing an APA action against. I'm going to see my time has expired. Can I ask you a couple of procedural questions? Arizona, what is the status of Arizona? Are they not a party anymore? So Arizona is still a party. I believe that they would like to seek to remove themselves from the case. I don't represent Arizona in this case. I can't speak for them, but that's my understanding that at some point they'd like to remove themselves from the case. Okay, but the briefs are not filed on behalf of Arizona? No, the briefs are not filed on behalf of Arizona, Your Honor. I don't know if you can address this or not. It seems to me that Ohio does not have the same kind of law that the other states do in terms of directly conflicting arguably with the guidance. Is that your understanding as well? We have not identified in Ohio law the arguably conflict, but Ohio would still have standing as an object of the regulation and with compliance costs that they would face. But you're correct, Your Honor, that we have not identified an existing Ohio law. I hear the compliance costs argument, and I certainly saw that in the Kentucky v. Yellen. It seems like there was evidence in those cases of compliance costs as opposed to just one or two paragraphs in a complaint. So I guess, is there any indication or am I missing something on compliance costs? For compliance costs, we filed declarations for Tennessee, but we have not filed declarations for the other states, Your Honor. Okay, thank you. I have one final question kind of like that. So the United States says, well, the states kind of claim that they have conflicting laws, but their laws don't really conflict. I think you say the laws arguably conflict. I'm wondering at the preliminary injunction stage, what's the standard? Is it arguably conflict? Do we have to use an analogy, make sort of an eerie guess about what these state statutes mean? What's the standard at this PI stage? The standard is arguably conflict, because that's what we would need in order to bring our claim against the agencies. But here, it's even clearer for some of the statutes, such as the United States has taken the position that it violates Title IX because it's a blanket ban for women's sports. So even for some of the states, it's not hard to discern that the United States even thinks that there's a conflict between these documents and the state laws. Counselor, let me ask you this, and this is, I'm asking for help because I can't find the document. Somewhere in one of the documents, I thought the statement was made or the position was made that the forcefulness of will do in a legislative rule is that you really have, the agency has to follow it. In an interpretive rule, is they can in fact press that or not. Number one, do you know where that might have come from? And B, is that a good distinction? I think it's a good distinction that if it takes away discretion from the agency, and you can see in cases like Nick Luther, two examples of those, they have to follow and it takes away that discretion. But then is that circular that if it takes away discretion, it's a legislative rule, but if it's only something that guides them, then it's only an interpretive rule. Isn't that circular? I mean, it may be a good distinction, but isn't something you have to make other than looking at it, you have to decide on normal principles. Is it interpretative or legislative? That's the rule that I've seen in cases, Your Honor, for distinguishing between legislative and interpretive rules. And even where an interpretive rule, as in poet biorefining is one of the cases that opposing counsel cites, even where it's just an interpretive rule, where there's a volt-foss change of the agency's approach to something, even then it's still consistent. A word you said where there is a full Volt-foss is the, my French is not the best, but it's V-O-L-T-E-F-A Oh, about face. About face, yes. But volt-foss is a specific term that the decision Your French is much better than mine. But that's, and Judge Garland actually ironically joined that decision in the D.C. Circuit, back when he was a judge. And so when there's a volt-foss, that's a final agency action that regulated entities have standing to bring a pre-enforcement challenge against. So here, similarly, the fact sheet interpretation were an about face from the agency's previous approach to these issues and imposed obligations on the institutions that they did not have previously. And for those reasons we encourage this court to affirm the District Court's preliminary injunction of the interpretation fact sheet and dismiss, is moot without vacatur, the appeal of the U.C. technical document. Can I just back, I'm sorry We're enjoining the fact sheet? We're enjoining the document? Or are we enjoining an enforcement based on an interpretation of Title IX that is contrary to existing regulation? It just seems odd to me that any court could enjoin a document. I mean, when you enjoin a rule or declare it, you know, vacated under 706, if that's still going to be a thing, we'll find out, but if, you're not enjoining the rule from existing, you're enjoining enforcement, right? Yes, Your Honor, sorry. You're correct, Your Honor. You're enjoining the agency from implementing the interpretation of fact sheet and the new approach to Title IX that's embodied in those documents. It's a common shorthand to refer to enjoining a document or a law, but you're correct, Your Honor, that what's really going on is we're asking, and that's what this court did, to enjoin the implementation of the rewriting of Title IX embodying these documents. Because it didn't go through notice and comment. So you're saying, I mean, I know you have substantive grounds too, but if they had gone through notice and comment, that ground would be gone. You'd say, well you've made an about-face and maybe the about-face is lawful or maybe it's not, but it's procedurally regular. Yes, so we'd have the procedural, we'd also have substantive arguments. I understand. Again, the linguistics here. Language at one point was used of enjoining the enforcement of this document. They say there's no enforcement. Other times you say enjoining the implementation of this document. If whatever you did, does that of its own force mean that they can't take a litigating position in some action in some other court that Judge Ashley has said you've got to shut up and you can't take this position? So enjoining the implementation, so they wouldn't be able to rely on these? They wouldn't be able to cite them? They say they're not. They say that they're not going forward and when I asked him, why are you worse off, he didn't give me a very good answer, which would mean that why are you better off with this injunction than without it? And I think we're better off because we've seen that with the 2022 notice of proposed rulemaking, for example, they try to make that consistent with the agency's interpretation. So what this would do is prevent the agency from... But the notice of rulemaking will end up with whatever rule that ends up after all the comments, right? I mean, whether it refers back to this or not is not going to make any difference, is it? Well, it requires the agency to approach these, and McCluth is an example, to approach these with an open mind instead of being already having made the decision that this is now what Title IX means. And so we're better off in that the agency would really have to... If you lose, either by us or in some other means, that's going to affect whether a future rulemaking is legal or not. So here the agency's already consummated its decision making process that this is what Title IX means. They don't contest that here. So we're better off in that this would stop the agency from continuing on feeling that they are bound to follow this new rewriting of Title IX. So that's a way in which you get... Bound to follow, but they could follow it because they wanted to, because the lawyers in Idaho decide that's the government's position? I mean, that argument would apply to any sort of... Even if they'd gone through notice and comment rulemaking, if the agency were to say, and that's what the 2022 proposed rulemaking says is simply that it's trying to clarify what Title IX already requires. So even if we were to bring a challenge to that point, the agency's... The rule were that if it's merely clarifying... Does the new NOPR say we're only clarifying? They use the word clarifying throughout. They use it, but that's... I thought they... I thought he would concede that it doesn't, that the new reg, if enacted in its current form, would impose new legal obligations. I mean, it imposes obligations on us. I think that they've already imposed many of those obligations on us through the fact sheet and the interpretation. But in cases where they don't have an open mind when they're going through the subsequent notice of proposed rulemaking, we're still allowed to challenge the initial... I mean, I don't know how enjoining these documents is going to work. If the... Now I'm back to if the Secretary of Education made a speech or wrote a law review article musings on Title IX. Here's what I think it means after Title IX. And it's just published it in a law review. I mean, you might say, okay, the Secretary of Education has committed himself to a position on what Title IX means. And then when he goes through the notice of proposed rulemaking, people are going to write in and say, no, that's not what it means. It means something else. We couldn't enjoin him from writing a law review article. So that piece of it just seems like an odd answer. It seems to me like any harm has to come from an interim enforcement of these rules. Like you're threatened with withholding funding or you're going to have to change your bathroom policy or whatever in a way that conflicts with existing regulations and didn't go through notice and comment. These are not mere musings. They impose... They say that we now have... And they inform us. They send them out to every school that we have an obligation not to discriminate based on sexual orientation and gender identity. And they provide those examples there. So these are not mere musings. These aren't preliminary thoughts. They don't... In the filings of this case they'll say this is just merely what the agency thinks. But in these documents themselves, they're not saying this is just merely what the Secretary thinks this might mean. You have to enforce Title IX this way. Starting now. Yes, Your Honor. And that's how regulated entities throughout the country have treated this. Just this past week in Wisconsin, there was a school district that has a locker room policy that cites the interpretation and they had a trans... The allegations are that a male student who's 18 years old disrobed in front of four female students in a locker room there in Wisconsin. And the agency's... The school's policy on locker rooms cites the interpretation. So schools throughout the country are treating these documents as if they have those obligations. You're saying there the school adopted a policy, right? Am I hearing the situation correctly? My understanding is that the school's locker room policy adopted after the interpretation came out and cited the interpretation and allowed... The U.S. government's going to make us do this. The U.S. government is making us do this. If we don't do this, they're going to bring in enforcement. Or they blame the government for what they want to do anyway, which is a common thing for entities to do. But I just want to make sure I'm right that in this situation, the school has officially voluntarily adopted a policy that your clients or similar folks don't like so that if we upheld Judge Ashley's injunction, this would wipe out the Wisconsin policy? The school board would be required to change the policy because they cited this other document? So the interpretation in fact should give regular entities two options. Either you comply and you comply and you would have to adopt policies like that and they provide the examples of you have to let individuals use living facilities consistent with their gender identity even if it's inconsistent with their sex, or you risk the loss of Title IX funding. So that's the choice that it puts every school and university throughout the country to. So I'm just trying to focus on the Wisconsin. Are you saying that if you win this litigation, that will wipe out the Wisconsin policy or simply it would give them political cover or it would require them to take away the political cover they have? I'm no expert on Wisconsin politics, but under Title IX Section 1686 expressly gives schools the option one way or the other to do something, but these documents take away the discretion of schools and say that you have to do this. For example, in Tennessee we have a case, D.H.V. Williamson County, where there's been a decision on a preliminary injunction there where there's an eight-year-old biological boy who wants to use the girl's restroom at the elementary school there. Without the injunction in place, the school is going to tell us we have to follow the interpretation and fact sheet. If not, they're going to follow through on their promise to open an investigation of us. We probably should wrap this up, but you're saying in the state of Tennessee we're getting pushback from our local school districts, but the local school districts and correct me if I'm wrong, they don't negotiate directly with the government for their funding, right? You do. The actions taken by the Department of Education are usually against the local school district and that's with the Granberry example of that. So would that be that the local school district would lose its portion of Tennessee's overall funding or that Tennessee would lose funding as a whole or in part because how does that work? I would have to investigate the issue, Your Honor. We have a state law that applies statewide that would arguably conflict with that there. So if they took an enforcement action and reached that decision, that would implicate schools across the state then. Is Wisconsin one of the litigants? No, Your Honor. Wisconsin is not one of the litigants. So they are bound to follow the interpretation of the fact sheet. Any more questions? All right. Thank you. Thank you, Your Honors. Good morning and may it please the Court. Matthew Bowman for the Intervenor Appellees. Including A.F. who's a female high school athlete in Arkansas which is protected by this injunction. And I'd like to talk about some of the questions that the Court was just asking about what the injunction does and why it's effective. Can I ask you a question before I forget? The School of Ozark, you all represent them I think in a filed assert petition. Is that case what is the impact on our case? I guess the argument there being if you're just following the statute, there's a traceability problem. Are you asking for us to do something inconsistent with that case or are the cases distinguishable? I'm asking the Court to just follow the law of this circuit. And in this circuit under Azar and Parsons and Detroit Edison, when an agency issues a document that does three things together, it creates a new standard, it says it's going to be fully enforced, and it gives examples about how the regulated entities must comply, then that's a legislative rule. Whatever the Eighth Circuit said about what the Department of Housing and Urban Development said on this issue, the ultimate issue there I think involved whether there was a religious exemption that's not relevant here. And then there was this sort of overlapping question of whether you have a right, whether you have an Article 3 injury if your notice and comment rights were denied under the APA. Now this Court has said in Dismas Charities that you do. So whatever the Eighth Circuit thinks about that, the binding precedent of this circuit is under Azar, under Dismas Charities, that legislative rules, even if the agency labels them not legislative rules, they are to be treated by the substance of what they do. And it's the combination of those factors, I think that you pointed out earlier, Judge Nalbandian, that can't be taken in isolation. But when a regulated entity gets a document that says, here's a new legal standard, and they even admit that it's really new, no discrimination on the basis of gender identity and sexual orientation, we're going to fully enforce it against you, here's a list of examples, bathrooms, sports teams, let one sex try out for the other, let one have entry to the other, that's binding. It creates new law. It's not merely a statement. And that's why it's not an interpretive rule. But as to my... Let me get this right, just so I got it. You started out saying there are three things, and then the last minute or two it only sounded like two things. Can you give me the three things again that made it a legislative rule? Yes, so it's issuing a binding standard. It's like the rule itself, or the law that... You and binding, is that two things or one out of your three? I think it's two. So there's a legal standard. Here's how must I behave. How must I behave? You can't allow discrimination on the basis of gender identity or sexual orientation. Do I have to follow it? Yes, we'll fully enforce it against you. That's what fully enforced means. It can't mean anything else. And the third one is, do we know what that means in specific? Oh, yes we do. Here are a bunch of examples. Bathrooms, sports, pronouns, etc. You combine all those three together, there is no regulated entity that gets that message and thinks, oh, I don't have to comply with this. There's a boilerplate at the end. And courts have dismissed boilerplate, the D.C. Circuit and Appalachian Power. So this court's precedent says that. But my client has a right, and this is important, my client has a right under Title IX to have female sports teams at her school. And what the department's rule does is it pushes men into those leagues. And when you push men into female teams and leagues, they're not female teams and leagues anymore. And so the agency has denied her rights under the existing Title IX rules in the statute. And that in itself, under the APA Section 702, is something that allows you to bring a challenge. And that's what makes the department's rule not just a violation of the notice and comment requirement, but contrary. Is she injured right now, or is she injured when she doesn't get the last spot on the team and it goes to a boy? She's protected from injury by the injunction. That's why we want it affirmed. But I'm just talking about in general. In the absence of the injunction, how would she be injured? She would have lost her legal right, because Title IX now gives her the legal right to a female team. Is there a boy who wants to join the team? Is there a competition that she's going to lose? Or is it speculative in that sense? It's not speculative in the sense that it's happening in states where this isn't happening. In fact, men are injuring high school girls in states like North Carolina. A case where a man spiked a ball into a high school girl's face and gave her a concussion. She has to have her own injury. She can't assert the rights of female athletes in North Carolina. Well, the injury she has is the loss of a legal right. So if the government says, you have a right to this under Title IX for 50 years. You have a right to female teams. And then the department comes along and says, no you don't. They've changed her legal right. Before, whether or not boys have come up in her high school and asked to do this, her legal rights changed. And courts widely recognize, as does the APA, that if you adversely affect someone's legal rights, that in itself is an injury. And this court has said that Congress can create statutes that have legal rights, the deprivation of which gives standing to sue. It said that in the investment Imhoff investment case. I mean, what if there were some Department of Education regulation that threatened free lunch at her school, but she's very wealthy. So she would never qualify for free lunch. You couldn't be like, well, I have a right to go to a school where there's free lunch. That's not her situation. She's on a female sports teams that she's been guaranteed the right to for almost 50 years, that Congress approved. These aren't even just Title IX regulations. Congress has essentially approved these regulations. The department has no more authority to change these than it has to rewrite the public law itself. I see my time has expired, but I'm glad to take additional questions. Just to answer one more of your questions, Judge Larson, the language of the injunction just does say that the agents of the department are enjoined from implementing the documents. So that's how the language works. Thank you very much. All right. We'll hear a rebuttal. Thanks, Your Honors. I have a few points. Judge Nobate, to your point about the School of Oaks Arks case, that case is, the holding there is indistinguishable from a holding here that the Department of Justice is understanding. The case there held a nearly identical document. An injury... So in Dismas Charities, though, we said that there was a notice and comment injury, essentially, in this circuit, right? I mean, if you're injured by this rag that didn't go through notice and comment, whatever that is, and I don't, we are bound by that, not by what the circuit says. The traceability and redressability point would be the same, right? Where the injury was flowing because the documents there were not. But in Dismas Charities, we said there was, we specifically addressed the standing question and said there was standing. Doesn't that take care of the question here? I don't think so, Your Honor. Only in that the key is that what's being enforced is the statute itself. And so addressability and traceability is any injuries caused by the statute and is not traceable to an injunction that would warrant enforcement. Is that true in every agency case? In other words, if the EPA is enforcing the Clean Water Act or the Clean Air Act, they could, they're regs, but they're really enforcing the statute ultimately, right? Or else we have a real delegation problem. So what's, so that just proves too much, doesn't it? No, because, Your Honor, in this case, it's the fact that these documents are not legislative rules that are, in fact, imposing obligations. If you have a situation in which the claim is that you're injured by a regulation, then the regulation is what is imposing the legal obligation, not these documents that aren't themselves imposing any legal obligations. But why, I mean, we just heard from the intervener who said, look, under AZAR, it has got to be a new interpretation, which I think you concede it's new, right? It has to be specific. Here's how it will work. And I grant that there might be play in the margins, but as far as a blanket rule, that's out, right? And then we'll fully enforce. This is what the document says. We will fully enforce. So how isn't that just AZAR? Your Honor, it's not AZAR in at least two respects. First, I would point to this Court's decision in Persons. The Court there said that even a legal determination that in and of itself did not have direct and appreciable legal consequences was in final agency action. And so these documents, in and of themselves, have no direct and appreciable legal consequences because they cannot be enforced. And so even if you think that this has a determined legal position, that was the same in Persons. And yet this Court decided that that wasn't final agency action that was reviewable. This is also quite different than AZAR. In AZAR, you had the agency actually relying on these documents to determine a party's legal obligations and liability. And again, the Department is not doing that in this context at all. And so these documents aren't legislative rules in that sense because they aren't imposing obligations. Why do you say we're not doing that? Because you haven't yet brought an enforcement action or because what does it mean we're not doing it? That you put out a notice to every school district in the country that said we will fully enforce this interpretation of Title IX? Your Honor, the key is that even if the Department had reached the contrary conclusion, had held that BASA didn't apply in this context in the way that the States would like, the States still could not use those documents to establish this legal safe harbor if, for example, a private party sued them. That's the key to tell that these aren't legislative rules. They don't create enforceable legal rights and obligations. And so, again, whether the interpretation is one that this Court agrees with, the question of whether something is a legislative rule can't turn on merely whether the interpretive inquiry was correct. It's whether it creates obligations. And the fact that if the Department had reached the contrary conclusion, these States still couldn't rely on these documents in defensive postures to create a safe harbor, they aren't legislative rules. So at the end of the first adversary's argument, as I wrote down, he said this takes away the discretion of the school boards, and with this interpretation, the States, like Wisconsin, are required to allow the boys to disrobe in the girls' locker rooms. I take it that you absolutely deny that. Your Honor, I deny that these documents mean that in a specific context like this Wisconsin case, they determine the outcome in any way. They just don't. But at the same time, you're not restrained even by Judge Atchley from going into Wisconsin and taking that position in litigation there. That's our understanding of the injunction. That's your understanding of the statute. At least you claim it's your understanding of the statute, not relying on the interpretation. You know, I wouldn't even go so far. I mean, not that it is, is that it could be. Correct, Your Honor. Exactly. It could be. But would you be allowed to go, I mean, Wisconsin's not a party to this lawsuit. Would you be allowed to go into Tennessee? If the same thing happened in Tennessee, would you be allowed to go into Tennessee under the current injunction? That is the government's understanding of this, of the injunction, is that it is barred because, and this goes back to an earlier question that you had, Judge Larson, about what's it mean to enjoin implementation of a document, right? The preliminary injunction, again, I'm out of time, if I don't, if I may finish. The preliminary injunction here was based on a procedural defect, or a perceived procedural defect. And so the document is enjoined for that reason. If it were the case that the court had ruled on the substantive provisions, which it hasn't, but if it was the case, then there would be a question about whether it could adopt this understanding of Title IX. But that wasn't the ground for the injunction. And so... But if you wanted to go into court in Tennessee and say, our understanding of Title IX is that bathrooms and bathrooms are segregated on the basis of biological sex alone. That is not permitted, which I think is what these rules say. And then you went in and you tried to go after a school district in Tennessee, you have a regulation that says, well, that's fine. So I don't understand, like, what you're saying is I'd like the permission to act contrary to my regulations? No, not at all, Your Honor. Again, the West Virginia case is an example of this, right? In the West Virginia case, the BPJ case, the Department filed an amicus brief there explaining why the Department believes that a categorical ban like the West Virginia law is a violation of Title IX, including under the existing regulations that exist. Now, again, the court might disagree with that. And that's because they say on the basis of sex, which you've changed the interpretation of. So the existing regulations say you can have separate toilet, locker room, and shower facilities on the basis of sex. And since on the basis of sex you have a different understanding of it, is why you think that's authorized by this regulation? No, and I would direct Your Honor, that inquiry is part of that statute prohibits discrimination on the basis of sex. And in light of BASA, the Department understands that includes discrimination on the basis of sexual orientation and gender identity. Got it. The Department in the Fourth Circuit case then went on to explain, even in light of the existing regulations, which provide as they are, the Department still understood that categorical bans to be a violation of Title IX because it violated, because they weren't sufficiently well-drawn to the classification that wasn't sufficiently well-drawn to protect against the broader anti-discrimination principle that Title IX embodies. Now we're kind of getting to the merits. But yeah, I understand. And just one more point, Your Honor. No one thinks that's a legislative rule, right? There, in the amicus brief, the Department has set out its understanding in a clear way. It has said that it believes that the West Virginia law is a violation of Title IX. But again, no one thinks that's a legislative rule, even though this Department has taken a definitive position. Going back to the Tennessee example, and when I raised Wisconsin I didn't mean to distinguish in that sense. In the Tennessee example, your position would be that if you decided that the right interpretation of the statute was to permit what was going on in Wisconsin, you would just say, we don't cite the interpretation. We never heard of the interpretation. This is our legal position based on the statute. And Judge Atschle's injunction would have no application. Is that correct? Because otherwise you'd be this injunction would be barring you from what you could say in court. Of course. It would be a little odd. But you're not actually you think Judge Atschle's injunction didn't do anything. It didn't enjoin you from doing anything. No, it did. It enjoined from relying on these documents. Citing, I mean, your compliance says we won't cite it. We won't base anything on it. We won't talk about it. It doesn't exist. Now, here's our legal position. But you're right in a sense, Your Honor, in that we don't understand these documents to establish legal rights and obligations. And so to the extent that the injunction doesn't, so you're right. I get it. It takes you back as to why are you fighting so hard on your side and why are the other folks fighting so hard on their side? To answer that question, again, the Department and other agencies routinely issue documents like this. And there's an institutional interest here, Your Honor. It can be the case that the states disagree with the interpretation of the document. That's well established. It can't be that just because an entity disagrees with a document, it means that it's necessarily a legislative rule. It doesn't mean that it establishes legal obligations and rights. But it also can't be that anything that interprets a statute is an interpretive rule. As Judge Nowandian said, in Chevron itself, like a stationary source was an interpretation of the Clean Air Act, right? So, I mean, that was a legislative rule. You know, I would point to this court, to Parsons again, right? Just because you've taken legal determination. And also the D.C. Circuit's decision in Poet by a Refining is another good example of this. Where there the court determined that an interpretation of a provision that had a very specific, this is how you do things if you're a regulated entity, that was final agency action, but not a legislative rule. Because it still merely reflected the interpretation of the statute. More questions? We would ask that the injunction be vacated. Thank you. Thank you both for your arguments. They were helpful and enlightening. And the court may adjourn court.